IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENE EVERETTE LAWSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 18 CV 4180 |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| ANDREW MARSHALL SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gene Lawson, acting pro se, seeks review of a denial of disability benefits. The administrative law judge ("ALJ") found that Lawson was capable of working a sedentary job despite his anxiety, panic disorder, and lumbar radiculopathy. The Commissioner of Social Security moves for summary judgment. For the following reasons, the court denies the Commissioner's motion and remands for further proceedings consistent with this opinion.

## DISCUSSION

To decide if a claimant is disabled, the ALJ goes through a five-step process, answering a question at each step. See 20 C.F.R. § 404.1520(a)–(f); White v. Barnhart, 415 F.3d 654, 657 (7th Cir. 2005). First, is the claimant doing substantial gainful activity? If so, the ALJ finds no disability. Second, does the claimant have an impairment or combination of impairments that is severe? If not, the ALJ finds no disability. Third, does the Commissioner consider those impairments conclusively disabling? If the impairments are conclusively disabling, the ALJ finds

the claimant disabled. If the impairments are not conclusively disabling, the ALJ goes on to the next two steps.

Fourth, does the claimant's residual functional capacity allow him to do his past relevant work? Residual functional capacity is "the bureaucratic term for ability to work." Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012). If the claimant can do past relevant work, the ALJ finds no disability. Fifth, can the claimant adjust to other jobs existing in significant numbers in the national economy? If the claimant can adjust, the ALJ finds no disability. If the claimant cannot adjust, the ALJ finds the claimant disabled.

The burden of proof for the first four steps belongs to the claimant. For the fifth, the burden shifts to the Commissioner. See Young v. Barnhart, 362 F.3d 995, 1000 (7th Cir. 2004).

The ALJ found at step three that Lawson's impairments were not conclusively disabling. Then, at step five, she found that Lawson could adjust to other jobs. She thus concluded that Lawson was not disabled.

This flowchart shows the five-step process, with the ALJ's findings marked in bold:



The Appeals Council denied review. That makes the ALJ's decision final and reviewable by this court. 20 C.F.R. § 404.981; Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005).

This court upholds the ALJ's decision if supported by substantial evidence. Schoenfeld v. Apfel, 237 F.3d 788, 792 (7th Cir. 2001); 42 U.S.C. § 405(g). Evidence is substantial when "a reasonable mind might accept [it] as adequate to support a conclusion." Diaz v. Carter, 55 F.3d 300, 305 (7th Cir. 1995) (quotations and citations omitted). The ALJ must consider all relevant evidence, building a "logical bridge" between the evidence and her conclusion. Clifford v. Apfel, 227 F.3d 863, 871, 872 (7th Cir. 2000). She must explain her analysis "with enough detail and clarity to permit meaningful appellate review." Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). The court may not substitute its judgment for the ALJ's by "reconsidering facts, reweighing evidence, resolving conflicts in evidence or deciding questions of credibility." Williams v. Apfel, 179 F.3d 1066, 1072 (7th Cir. 1999).

**1  Does substantial evidence support the ALJ's decision at step three?**

The ALJ found at step three that Lawson's impairments were not conclusively disabling. The ALJ found no evidence of nerve root compression under Listing 1.04A. She found that Lawson had no marked functional limitations under Listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). For the following reasons, substantial evidence supports the ALJ's 12.04 and 12.06 findings. Substantial evidence does not support the ALJ's 1.04A finding.

**1.1  Finding no evidence of nerve root compression under Listing 1.04A**

The ALJ found no evidence of nerve root compression under Listing 1.04A. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04A. Under Listing 1.04A, Lawson had the burden of showing nerve root compression characterized by four criteria:

- neuro-anatomic distribution of pain;
- limitation of motion of the spine;
- motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss; and
- positive straight-leg raising test, sitting and supine (if the lower back is involved).

The ALJ's 1.04A finding lacks substantial evidence. The ALJ's analysis comprised a single sentence: "[T]hough [Lawson] does have evidence of degenerative disc disease, for part (A) there is no evidence of nerve root compression characterized by neuro-anatomic distribution of pain and findings showed full strength and the record failed to document any abnormalities of the claimant's reflexes or current positive straight leg raise." This kind of "perfunctory analysis" tracking the Listing criteria has been "repeatedly found inadequate to dismiss an impairment as not meeting or equaling a Listing." Minnick v. Colvin, 775 F.3d 929, 935–36 (7th Cir. 2015) (remanding for lack of substantial evidence).

Here, as in Minnick, "the ALJ failed to acknowledge several aspects of the record that could in fact meet or equal Listing 1.04." Id. at 936. Dr. Goldflies found that Lawson had a restricted range of motion of the lumbar spine. He checked off boxes on a questionnaire indicating that Lawson had "motor deficits" and "chronic pain in a radicular pattern." Dr. Curtis found a "decrease[d] lower extremity range of motion." Dr. Biale found a limited range of motion of the lumbar spine and a positive straight leg test. He noted that "[s]ensory [sic] is diminished in the left lower extremity." Dr. Castellanos diagnosed Lawson with lumbar radiculopathy—a condition involving "[p]ressure on the nerve root," causing "pain, numbness, or a tingling sensation that travels or radiates to other areas of the body that are served by that nerve." Israel v. Colvin, 840 F.3d 432, 435 n.5 (7th Cir. 2016) (quoting another source).

5

Dr. Diesfeld noted "constant, sharp, shooting" pain "radiating to lower extremities bilaterally associated with numbness."

The court "cannot discern from the ALJ's scant analysis whether she considered and dismissed, or completely failed to consider, this pertinent evidence." Minnick, 775 F.3d at 936. "If the ALJ did consider and dismiss" Lawson's evidence, "she never so stated." Id. Maybe the ALJ could reasonably have found that Lawson's evidence was outweighed by other evidence. Other straight leg tests, for example, turned up negative. The ALJ might have been justified in resolving such evidentiary conflicts against Lawson. But to allow for meaningful review, the ALJ had to "build an accurate and logical bridge from the evidence to her conclusion." Dixon, 270 F.3d at 1176. There was no such bridge.

The government seems to rely on the opinions of two medical consultants but fails to explain their significance. Nor did the ALJ rely on those opinions. And by citing them as a basis for upholding the ALJ's decision, the government "violate[s] the Chenery doctrine (see SEC v. Chenery Corp., 318 U.S. 80, 87–88 (1943)), which forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced." Parker v. Astrue, 597 F.3d 920, 922 (7th Cir. 2010).

The government has not argued that the court can "predict[ ] with great confidence that the agency will reinstate its decision on remand." Spiva v. Astrue, 628 F.3d 346, 353 (7th Cir. 2010). It has not, in other words, argued that any errors were harmless. The court thus remands for further proceedings consistent with this opinion. On remand, the ALJ should explain her analysis of Listing 1.04A with enough detail and clarity to allow for meaningful review.

6

### 1.2 Finding no marked functional limitations under Listings 12.04 and 12.06

Lawson suffers from anxiety and panic disorder. The ALJ found that those impairments did not meet the criteria of Listings 12.04 and 12.06. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. The ALJ's 12.04 and 12.06 findings are supported by substantial evidence.

The agency evaluates functional limitations on a five-point scale: none, mild, moderate, marked, and extreme. The ALJ found that Lawson's limitations were moderate. A limitation is moderate if the claimant's ability to function effectively is "fair." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c). A limitation is marked if the claimant's ability is "seriously limited." Id. at (F)(2)(d).

The only relevant limitations are those in paragraph B. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B). Under that paragraph, Lawson's anxiety and panic disorder must cause at least two marked limitations of the following four areas of mental functioning:

- understanding, remembering, or applying information;
- interacting with others;
- concentrating, persisting, or maintaining pace; and
- adapting or managing oneself.

The ALJ analyzed Lawson's psychiatric records and found that his limitations were moderate. Lawson accepts that analysis. His argument turns on what the ALJ did not analyze: evidence of his physical pain. Lawson asserts that pain, like mental disorders, can impair mental functions. He argues that the ALJ erred by not considering how his pain affected his limitations.

The ALJ did not err. The ALJ's task was to "consider only the limitations that result from [Lawson's] mental disorder(s)." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(F)(1). Lawson does not argue that his pain results from his anxiety or from his panic disorder. It results from his

7

degenerative disc disease. His pain might well impair his mental functions, but that has nothing to do with whether his mental disorders meet the criteria in paragraph B.

## 2 Does substantial evidence support the ALJ's decision at step five?

The ALJ found at step five that Lawson was incapable of doing past relevant work, but that he was capable of working a sedentary job. The ALJ found that Lawson's self-described pain was no more than a six out of ten and that he needed an option to stand or sit for five minutes every hour. The ALJ credited a vocational expert's uncontested testimony about how many jobs were available to someone with Lawson's restrictions. The ALJ decided that Lawson was not disabled. For the following reasons, substantial evidence does not support the ALJ's decision.

### 2.1 Finding that Lawson describes his pain as no more than six out of ten

The ALJ found that Lawson "described his pain to Dr. Diesfeld at the most, five out of ten and to Dr. Goldflies as, at the most, six out of ten." Based on this six-out-of-ten rating, the ALJ found that "giving the claimant more limitations, like being off task at work over 15% of the time is not fully supported in the record." The ALJ also used Lawson's six-out-of-ten rating to discount the opinions of Lawson's treating physicians, Drs. Castellanos and Goldflies.

The ALJ mischaracterized the evidence. Dr. Diesfeld's notes from January 2017 and February 2017 do not state that Lawson described his pain as, "at the most, five out of ten." Both sets of notes state: "Average pain is 6 and ranges between 3–9." Lawson's pain <u>on the day</u> of the January visit was "4"; for February, it was "4–5."

Nor do Dr. Goldflies's notes from November 2015 and June 2016 state that Lawson described his pain as, "at the most, six out of ten." Neither set of notes indicates Lawson's maximum level of pain. The November notes state that Lawson's pain was "7/10"; the June notes, "6/10."

The ALJ's "mischaracterization of the medical evidence" requires remand. Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002) (remanding because the ALJ characterized a claimant's EEG reports as "unremarkable," even though those reports showed seizures and neurophysiological disturbances); see Martin v. Saul, 950 F.3d 369, 375 (7th Cir. 2020) (remanding because the ALJ relied on evidence "support[ing] a finding of non-disability while ignoring evidence to the contrary"). The government has not argued that the agency would surely deny benefits on remand. Nor would this court so find. An accurate understanding of Lawson's self-reported pain might well change the ALJ's analysis of Lawson's ability to work. And it might change how the ALJ weighs the opinions Lawson's treating physicians, Drs. Castellanos and Goldflies. On remand, the ALJ should reassess Lawson's pain and decide whether that reassessment affects her decision to deny benefits.

### 2.2 Doubting Lawson's pain testimony based on his ability to take care of himself

Lawson testified that he feels constant pain in his back and legs. He testified that lying down reduces his pain. When the ALJ asked him how long he could stand before his pain "gets really bad," Lawson said, "probably about an hour." When asked how long he could sit before his pain "becomes a real problem," Lawson said, "That would be about an hour as well."

The ALJ doubted this testimony based on Lawson's ability to take care of himself. That was error. Lawson testified that he lives on the second floor and that he gets there by climbing the stairs. He testified that he was capable of dressing, bathing, cleaning, laundry, and light shopping. The ALJ reasoned that Lawson's ability to do these tasks (and the level of pain he described to his physicians, which the ALJ misunderstood) conflicted with his pain testimony. The ALJ "conclude[d] that the objective evidence fails to support the claimant's assertions of

9

total disability and the symptoms he alleged at the hearing . . . exceed the objective medical findings."

The ALJ's reliance on Lawson's "ability to perform household tasks" was "mistaken." Roddy v. Astrue, 705 F.3d 631, 639 (7th Cir. 2013). An ALJ may "consider a claimant's daily activities when evaluating their credibility." Id. But that "must be done with care." Id. The Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." Id. The "critical differences" between daily living and full-time work are that "a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer." Bjornson, 671 F.3d at 647.

The ALJ did not explain why she found Lawson's ability to take care of himself inconsistent with him feeling serious pain after sitting or standing for more than an hour. Lawson never testified that he needs to sit or stand for more than an hour to do his daily activities. Other testimony not mentioned by the ALJ suggests that Lawson spends much time lying down—and certainly with the option of lying down. When asked how he passes the time, he said, "I don't do a whole lot of anything." The day before the hearing, he "basically sat around and laid around," watching "a little TV." He testified that, "A lot of the times when I watch TV, I lay down."

Even if Lawson had testified that he needs to sit or stand for more than an hour to do his life activities, he might nonetheless be able to dress, bathe, and clean despite feeling serious pain. See Bjornson, 671 F.3d at 647 ("Doubtless [the claimant] dresses and bathes more frequently than twice a week, but one can have awful headaches yet still dress and bathe."). Either way, the ALJ did not carefully consider how Lawson's ability to take care of himself might translate

into an ability to work full-time. "[W]ithout acknowledging the differences between the demands of [life] activities and those of a full-time job, the ALJ was not entitled to use [Lawson's] successful performance of life activities as a basis to determine that [his] claims of a disabling condition were not credible." Ghiselli v. Colvin, 837 F.3d 771, 777–78 (7th Cir. 2016).

### 2.3 Finding that Lawson has no problems taking care of himself

The ALJ also mischaracterized Lawson's testimony about taking care of himself. Lawson did not, as the ALJ stated, testify that he "has no problems with taking care of his personal care." He simply affirmed that he was "able to take care of [his] personal hygiene." Lawson's function report illustrates the difference. On that report, Lawson did not check the box for "no problem with personal care." He wrote that dressing, bathing, and using the toilet "causes pain + takes longer." The ALJ said nothing about pain when describing Lawson's function report, stating only that Lawson "can independently get dressed and bathe, it just takes longer than normal."

These errors require remand. An ALJ may neither mischaracterize the record nor cherry-pick facts supporting a finding of non-disability. See Terry v. Astrue, 580 F.3d 471, 477–78 (7th Cir. 2009) (remanding because the ALJ "repeatedly mischaracterized the record in identifying purported 'inconsistencies' in [the claimant's] testimony"); Martin, 950 F.3d at 375 (remanding because the ALJ "highlight[ed] facts that support a finding of non-disability while ignoring evidence to the contrary").

### 2.4 Finding that Lawson has normal strength in his lower extremities

The ALJ did not err in finding that Lawson has normal strength in his lower extremities. Lawson was examined by Drs. Biale and Diesfelt. Dr. Biale found "Strength of 5/5 in upper and lower extremities." Dr. Diesfeld found that "Motor is grossly intact." The ALJ reasonably

11

credited their findings. Lawson asserts that lumbar radiculopathy necessarily weakens the lower extremities, but he cites no evidence.

### 2.5 Finding that Lawson has a normal gait

The ALJ did not err in finding that Lawson has a normal gait. Lawson was examined by Drs. Biale and Diesfelt. Both of them found that Lawson had a normal gait. The ALJ reasonably credited their findings. Dr. Goldflies found that Lawson had an unlevel pelvis and a functionally short right leg, but no record evidence suggests that those conditions necessarily mean an abnormal gait, and Lawson cites no such evidence.

### 2.6 Finding that Lawson was first diagnosed with anxiety on May 6, 2015

The ALJ did not err in finding that Lawson was first diagnosed with anxiety on May 6, 2015. Lawson points to no earlier diagnosis. May 6, 2015, was when Lawson began seeing Dr. Dudzinski. Dr. Dudzinski's notes on that day include a clinical diagnosis of anxiety disorder. The notes also include Lawson's treatment history: "He reports that he has been struggling with anxiety, panic attacks since his teen years, although has not been looking [for] treatment until a few years ago."

Lawson's long struggles with anxiety and with panic attacks are not inconsistent with first being diagnosed in 2015. A mental condition's onset date need not coincide with its date of diagnosis. Mental conditions often go undiagnosed until later in life. E.g., Wilder v. Chater, 64 F.3d 335, 337 (7th Cir. 1995) ("[D]octors who are not psychiatrists are slow to diagnose a mental illness, such as depression, that is not manifested in wild behavior."); Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[T]he fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that Dr. Brown's assessment of claimant's condition is inaccurate.").

The ALJ would have erred had she found that Lawson had no anxiety before 2015 merely because he had no diagnosis before 2015. The ALJ did not make that error. Her finding was not about when Lawson first started to suffer symptoms. It was about when Lawson was first diagnosed. In making that finding, the ALJ reasonably used the earliest diagnosis in the record.

### 2.7 Discounting Dr. Castellanos's opinions on Lawson's ability to work

The ALJ erred in discounting Dr. Castellanos's opinions on Lawson's ability to work. Dr. Castellanos was Lawson's treating physician. He completed a questionnaire in which he opined that: (1) Lawson frequently suffers pain severe enough to interfere with simple work tasks; (2) Lawson can sit for only two hours total in an eight-hour workday; and (3) Lawson needs three to five unscheduled breaks during the workday, fifteen to thirty minutes each.

When an ALJ discounts a treating physician's medical opinion, the ALJ must give "good reasons." 20 C.F.R. § 404.1527(c)(2). Some of the ALJ's reasons were good. The ALJ reasoned that the record lacked an examination from Dr. Castellanos supporting his opinions. The ALJ also noted that Lawson started treating with Dr. Castellanos only recently—the questionnaire was completed five months after their relationship began. These were good reasons. See 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."); id. at (c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

But the ALJ also discounted Dr. Castellanos's opinions based on her misunderstanding of Lawson's self-reported pain. See 2.1; 2.2; 2.3. An accurate understanding of Lawson's pain might affect how the ALJ views each of Dr. Castellanos's opinions on remand. The ALJ might,

13

for example, credit Lawson's testimony that he can sit for only an hour before his pain becomes a serious problem. The ALJ would not then find, as she did, that "[t]here is no evidence to suggest that the claimant can only sit for two hours total in a work day," and she would not then use that to discount Dr. Castellanos's opinions. These issues are for the ALJ to consider on remand in light of all the relevant evidence.

### 2.8 Discounting Dr. Goldflies's opinion that pain prevents Lawson from reaching

The ALJ erred in discounting Dr. Goldflies's opinion that pain prevents Lawson from reaching. Dr. Goldflies was Lawson's treating physician before Dr. Castellanos. He completed a questionnaire in which he stated that Lawson suffered from "L4 / 5 disc herniation." Dr. Goldflies opined, "no bending, twisting or reaching[;] causes pain."

The ALJ gave "less weight" to Dr. Goldflies's reaching opinion. The ALJ reasoned that "Dr. Goldflies's own exam findings do not fully support the alleged issues with the claimant's cervical spine, upper extremities, and his own exam fails to document any abnormalities with the claimant's strength, gait, and reflexes . . . ."

The ALJ did not explain her reasoning "with enough detail and clarity to permit meaningful appellate review." Briscoe, 425 F.3d at 351. The ALJ seems to have believed that something was missing from Dr. Goldflies's exam findings—but what? "Do not fully support" is as opaque as "not entirely credible," a phrase criticized by the Seventh Circuit as "yield[ing] no clue to what weight the trier of fact gave the testimony." Parker, 597 F.3d at 922.

Opacity can be harmless when the evidence strongly favors one side. But some of Dr. Goldflies's exam findings could in fact have justified his reaching opinion. The ALJ doubted Lawson's "alleged issues" with his "cervical spine," yet Dr. Goldflies's notes from February 4, 2016, show restricted motion in Lawson's C1 vertebrae. The ALJ doubted that Lawson had

14

issues with "upper extremities," yet Dr. Goldflies's notes from June 17, 2016, show that Lawson's pain was aggravated by "bending," "lifting," and "certain positions."

The ALJ might have had "good reasons" to reject these findings from Dr. Goldflies, who was at that time Lawson's treating physician. 20 C.F.R. § 404.1527(c)(2). If so, those reasons were absent from the ALJ's written explanation. The ALJ should address that error on remand, reconsidering Dr. Goldflies's opinion in light of all the relevant evidence.

### 2.9 Finding that jobs exist in the national economy that Lawson can perform

Lawson has forfeited his challenge to the vocational expert's testimony. The vocational expert gave uncontested testimony at Lawson's hearing. He estimated how many jobs were in the national economy for three occupations: stuffers, ampule sealers, and microfilm document preparers. Lawson's lawyer did not object. The ALJ accepted the vocational expert's estimates and concluded that Lawson was capable of adjusting to other jobs existing in significant numbers in the national economy.

Lawson now argues that the three jobs identified by the expert are all but extinct. He might be right. See Hill v. Colvin, 807 F.3d 862, 869 n.10 (7th Cir. 2015) ("[T]he vocational expert should have explained the source and accuracy of his data concerning the number of available jobs. We are skeptical, for example, about how many jobs exist today that involve maintaining library records on microfilm.") (citations omitted). But "by failing to object during the hearing," Lawson has forfeited his challenges to "the vocational expert's testimony about the number of positions" available for each of the three occupations. Brown v. Colvin, 845 F.3d 247, 254 (7th Cir. 2016).

Still, the ALJ on remand will likely need to take a fresh look at available jobs. If the ALJ finds, for example, that Lawson is less able to sit for long periods than she thought before, she

15

will need to reconsider Lawson's ability to work, which will in turn affect the kinds of jobs in the current national economy available to Lawson.

### 3   Did the Appeals Council wrongly refuse to consider new evidence?

Lawson argues that the Appeals Council wrongly refused to consider evidence that was new, material, and time-relevant. See 20 C.F.R. § 404.970(a)(5) (listing the Appeals Council's criteria for considering new evidence). The court lacks the records necessary to consider Lawson's argument. Lawson's new evidence was neither included in the certified administrative record nor filed in this court. Given the other reasons for remand, the court need not decide whether remand to complete the administrative record is authorized or necessary.

Lawson submitted to the Appeals Council treatment notes from Drs. Diesfeld and Goldflies. The Appeals Council refused to consider either set of notes, writing, "We did not consider and exhibit this evidence." Dr. Diesfeld's notes, the Appeals Council wrote, were "not new." Dr. Goldflies's notes "d[id] not show a reasonable probability that it would change the outcome of the decision."

The court rejects the government's jurisdictional challenge. Lawson is entitled to seek judicial review of the Appeals Council's legal conclusions. Those legal conclusions include whether evidence is "new and material" under the agency's regulation. Stepp v. Colvin, 795 F.3d 711, 722 (7th Cir. 2015). This court thus has jurisdiction to review the Appeals Council's conclusion that Dr. Diesfeld's notes were not new.

Whether Dr. Goldflies's notes are reviewable is more complicated. Under Seventh Circuit law, materiality—a legal conclusion reviewable by courts—is defined as evidence creating a "reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." Id. at 725. The denial of "plenary review" by the Appeals Council,

16

a discretionary decision not reviewable by courts, is defined by the Appeals Council's "conclusion that the record—as supplemented—does not demonstrate that the ALJ's decision was contrary to the weight of the evidence." Id. at 722 (quotation marks omitted).

That language triggering plenary review used to be part of the agency's regulation for considering new evidence. No more. The agency revised the regulation, which now provides that "the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5) (emphasis added). Judge Sweeney explains that the agency's revision converts language that used to trigger plenary review into language of materiality:

> The revised regulation jettisons any explicit reference to the Appeals Council comparing the ALJ's decision against the weight of the evidence as part of its determination to grant review. Instead, the regulation explicitly incorporates the language used by the Seventh Circuit to evaluate materiality as part of the required determination. The regulation continues to require that the evidence is also material, which renders the requirements duplicative when applying the existing Seventh Circuit precedent.

Teresa F. v. Saul, No. 1:18-cv-01967-JRS-MPB, 2019 WL 2949910, at *8 (S.D. Ind. July 9, 2019). This court agrees that "the Seventh Circuit's past distinction [is] unworkable as applied to the revised regulation." Id. at *9.

The Appeals Council stated that Dr. Goldflies's notes did "not show a reasonable probability that it would change the outcome of the decision." "District courts within this circuit have differed over whether review is available, under the revised regulation, when the [Appeals Council] uses such language in the denial order." Musonera v. Saul, 410 F. Supp. 3d 1055, 1060 (E.D. Wis. 2019) (Adelman, J.) (collecting cases). This court agrees with Judge Adelman's reasons for finding review available. See id. 1061–62 (discussing the modest costs of materiality

17

review, the principle that ambiguity should be construed in favor of review, and the serious risks of wrongly denying review to claimants seeking to submit new evidence).

This court thus has jurisdiction to review the Appeals Council's refusal to consider Lawson's new evidence. Yet neither Lawson nor the government mentioned that Lawson's new evidence was absent from the certified administrative record. Neither party asked for a remand to complete the administrative record; neither party discussed this court's authority to do so. See Hollon ex rel. Hollon v. Commissioner of Social Security, 447 F.3d 477, 483 (6th Cir. 2006) (discussing "the standards that must be met before a district court may order a sentence six remand [under 42 U.S.C. § 405(g)] for the taking of additional evidence"). The court need not consider Lawson's argument further given the other reasons for remand.

## CONCLUSION

For these reasons, the Social Security Commissioner's summary judgment motion [Doc. 15] is denied. The court remands for further proceedings consistent with this opinion.

**ENTER:** June 1, 2020

Robert W. Gettleman
United States District Judge